Sally S. Chan, Esq. (SBN 258775)
Karen K. Tso, Esq. (SBN 285369)
**WEST THEMIS LAW, PC**
2476 Huntington Drive
San Marino, California 91108
Telephone: (626) 737-8585
Facsimile: (626) 737-8528
Email: info@wthemislaw.com

Attorneys for Plaintiff
HUGO GARCIA

**UNITED STATES DISTRICT COURT**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| HUGO GARCIA, an individual,<br><br>Plaintiff,<br>v.<br><br>Extime PS, LLC (*formerly known as The Private Suite Holdings, LLC),* a Delaware limited liability company, EXTIME PS INC., a Delaware corporation; THE PRIVATE SUITE LAX LLC, a California limited liability company; and DOES 3 through 50, inclusive,<br><br>Defendants. | **Case No. 2:26-cv-00081-ODW (AJRx)**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. RETALIATION IN VIOLATION OF CAL. LABOR CODE (LAB. CODE §§ 1102.5, 98.6, 6310)**<br>**2. RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT (GOV. CODE § 12940(H))**<br>**3. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br>**4. FAILURE TO PROVIDE MEAL BREAKS (LAB. CODE §§ 226.7, 512; IWC WAGE ORDER NO. 9-2001)**<br>**5. FAILURE TO PROVIDE REST BREAKS (LAB. CODE § 226.7; IWC WAGE ORDER NO. 9-2001)**<br>**6. FAILURE TO PAY OVERTIME AND ALL WAGES DUE (LAB. CODE §§ 510, 1194, 1197, 1198;** |

IWC WAGE ORDER NO. 9-2001)
7. FAILURE TO INDEMNIFY NECESSARY BUSINESS EXPENSES (LAB. CODE § 2802)
8. UNFAIR COMPETITION LAW – "UNLAWFUL" PRONG (BUS. & PROF. CODE § 17200 ET SEQ.)
9. FAILURE TO PROVIDE PERSONNEL RECORDS (LAB. CODE § 1198.5)
10. WAITING TIME PENALTIES (LAB. CODE § 203)
11. WAGE STATEMENT VIOLATIONS (LAB. CODE § 226)
12. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
13. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
14. PRIVATE ATTORNEYS GENERAL ACT ("PAGA") (LAB. CODE §§ 2698 ET SEQ.)

**DEMAND FOR JURY TRIAL**

Plaintiff HUGO GARCIA ("Plaintiff") brings this First Amended Complaint against the Defendants named herein, as follows:

## PARTIES

1. Plaintiff HUGO GARCIA ("Plaintiff" or "GARCIA") is an individual residing in the County of Los Angeles, State of California.

2. Defendant EXTIME PS LLC, formerly known as The Private Suite Holdings, LLC ("Extime PS" or "the LLC"), is a limited liability company organized under the laws of the State of Delaware. Its sole member is Extime PS Inc. Extime PS LLC conducts and at all times relevant herein conducted business in the State of

California, County of Los Angeles, operating a private terminal facility at Los Angeles International Airport ("LAX"). Extime PS LLC was the employer of record for Plaintiff and exercised control over his wages, hours, and working conditions.

3. Defendant EXTIME PS INC. ("Extime" or the "Parent") is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York. Extime PS Inc. is the 100% parent and sole member of both Extime PS LLC and The Private Suite LAX LLC. At all times relevant herein, Extime PS Inc. exercised direct and centralized control over all employment decisions affecting Plaintiff, including hiring, compensation, discipline, and termination, through the entities' shared executive leadership and unified HR and legal departments. Extime PS Inc. is a joint employer of Plaintiff and is jointly and severally liable for the conduct alleged herein.

4. Defendant THE PRIVATE SUITE LAX LLC ("PS LAX") is a limited liability company registered to do business in the State of California, with operations at Los Angeles International Airport. PS LAX is a wholly owned subsidiary of Extime PS Inc. and a sister entity to Extime PS LLC within the Extime integrated enterprise. At all times relevant herein, PS LAX personnel directly staffed and administered the LAX terminal operations where Plaintiff was employed, including the supervisory, HR, and management functions through which the adverse employment actions alleged herein were carried out. PS LAX is a joint employer of Plaintiff and is jointly and severally liable for the conduct alleged herein.

5. The true names and capacities of the Defendants named herein as DOES 3 through 50, inclusive, whether individual, corporate, or otherwise, are unknown to Plaintiff, and therefore, Plaintiff sues such Defendants by fictitious names as provided by Cal. Code Civ. Proc. § 474. Plaintiff will seek leave to amend the Complaint to allege the true names and capacities of the DOE. Defendants when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitious DOE Defendants are residents of the State of California and/or do business

in the State of California and participated in the acts and omissions alleged below.

6. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants named herein as DOES 3 through 50 was the agent, servant, employee, and representative of one or more of the other Defendants, and in engaging in the acts or omissions alleged below, was acting within the scope of its authority as such agent, servant, employee and representative with the permission and consent of the above individuals and/or entities.

7. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants named herein as DOES 3 through 50 was the agent, servant, employee, and representative of one or more of the other Defendants, and in engaging in the acts or omissions alleged below, was acting within the scope of its authority as such agent, servant, employee and representative with the permission, consent, and ratification of the above individuals and/or entities. Plaintiff is informed and believes and thereon alleges that there exists, and at all times mentioned herein existed, a unity of interest and ownership of and between Defendants and DOES 3 through 50 inclusive, such that any individuality and separateness of each Defendant has ceased.

8. Plaintiff is further informed and believes, and thereby alleges, that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants, and that each Defendant acted pursuant to a conspiracy and agreement to engage in the alleged conduct herein.

9. The term "Defendants" in this Complaint is intended to refer to Defendant Extime PS LLC formerly known as The Private Suite Holdings, LLC, Defendant Extime PS Inc., Defendant the Private Suite LAX LLC, and to all DOE Defendants in this action.

//

//

**INTEGRATED ENTERPRISE, ALTER EGO, AND JOINT EMPLOYER ALLEGATIONS**

10. On February 9, 2026, Andrew Lincoln — Vice President of Legal and General Counsel of The Private Suite / Extime, serving in that capacity for both Extime PS Inc. and all of its subsidiaries including Extime PS LLC and The Private Suite LAX LLC — filed a sworn declaration under penalty of perjury in The Private Suite IAD, LLC v. Metropolitan Washington Airports Authority, No. 1:26-cv-349-BAH (D.D.C.), ECF No. 8-2 (the "Lincoln Declaration"). The Lincoln Declaration constitutes sworn admissions of an authorized agent and officer of Defendants and is incorporated herein by reference.

11. The Lincoln Declaration establishes the following facts regarding the corporate structure and integrated operations of Extime PS Inc. and its subsidiaries, including Extime PS LLC and The Private Suite LAX LLC:

a) Extime PS Inc. wholly owns Extime PS LLC, The Private Suite LAX LLC, and all other Extime subsidiaries at each airport location. (Lincoln Decl. ¶¶ 3-5.)

b) "Extime's business is identical to that of its subsidiaries," and they "operate together in tandem and feature significant, if not complete, overlap." (Lincoln Decl. ¶¶ 6, 10.)

c) PS IAD — a sister subsidiary to PS LAX — "does not currently have any employees, but is instead run exclusively with personnel employed by Extime and PS LAX," establishing that PS LAX personnel staff operations across the Extime enterprise, including at the LAX terminal. (Lincoln Decl. ¶ 9.)

d) All entities share the same office address. (Lincoln Decl. ¶ 11.)

e) Extime and its subsidiaries "feature the same leadership, including the same chief executive officer, chief financial officer, and other key leadership positions." (Lincoln Decl. ¶ 12.)

f.) "Extime's leadership collectively make decisions for all Extime subsidiaries... including financial planning, competitive strategy, pricing, human resources, and legal matters." (Lincoln Decl. ¶ 13.)

g.) Lincoln serves as General Counsel for both Extime PS Inc. and all its subsidiaries on all legal matters; no subsidiary has its own legal counsel. (Lincoln Decl. ¶¶ 14-15.)

h.) "Extime and its subsidiaries... also have a single, unified Human Resources department that services all entities. That HR Department handles all hiring, onboarding, training, payroll, benefits, discipline, and termination decisions for employees." (Lincoln Decl. ¶ 16.)

i.) "There is no practical or functional separation between the confidential and proprietary information of the Extime and its subsidiaries." (Lincoln Decl. ¶ 17.)

12. Based on the foregoing, Extime PS Inc., Extime PS LLC, and The Private Suite LAX LLC constitute a single integrated enterprise and single employer within the meaning of California and federal employment law. All four factors of the integrated enterprise test are satisfied: (a) interrelation of operations — all entities share leadership, HR, legal, office, and information with complete operational overlap; (b) common management — identical executive officers govern all entities and make all decisions collectively; (c) centralized control of labor relations — a single unified HR department handles all hiring, discipline, and termination for all entities; and (d) common ownership — Extime PS Inc. is the 100% parent of both Extime PS LLC and The Private Suite LAX LLC.

13. Extime PS Inc. and The Private Suite LAX LLC are each the alter ego of Extime PS LLC, and vice versa. There is such a unity of interest and ownership among all three entities that their individuality and separateness has ceased. The hallmarks of alter ego are present: 100% common ownership; identical officers and directors governing all entities; a single unified HR department; a single legal department and General Counsel; shared physical office; no practical or functional

separation of information or operations; and the use of the subsidiary structure to place the employer-of-record designation in Extime PS LLC while vesting operational control and staffing authority in Extime PS Inc. and PS LAX. Adherence to the fiction of separate corporate existence would sanction injustice: it would allow Extime PS Inc. to direct and control all employment decisions while insulating itself from liability, and would allow The Private Suite LAX LLC to provide the personnel who administered those decisions on the ground while bearing no legal accountability for the consequences. Disregarding the corporate form is necessary to prevent this result.

14. The retaliation, wrongful termination, wage-and-hour violations, and other unlawful conduct at issue in this action were administered through the unified HR department and shared leadership structure maintained by Extime PS Inc. and staffed in significant part by PS LAX personnel. Each of Extime PS Inc., Extime PS LLC, and The Private Suite LAX LLC is jointly and severally liable as Plaintiff's employer for the full damages alleged herein.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is a citizen of California. Defendant Extime PS LLC is a citizen of Delaware and New York (the citizenship of its sole member, Extime PS Inc.). Defendant Extime PS Inc. is a citizen of Delaware and New York. The citizenship of The Private Suite LAX LLC depends on the citizenship of its members, which Plaintiff is currently investigating through discovery. The amount in controversy exceeds $75,000, exclusive of interest and costs. [NOTE: If the Court determines that the joinder of The Private Suite LAX LLC destroys diversity jurisdiction, Plaintiff does not oppose remand to Los Angeles Superior Court pursuant to 28 U.S.C. § 1447(e).]

16. This action was originally filed in Los Angeles Superior Court (Case No. 25STCV33082) on November 12, 2025, and removed to this Court. Venue is

proper in this District pursuant to 28 U.S.C. § 1441(a) because the state court action was filed in Los Angeles County, which is within this District. All relevant employment conduct occurred in Los Angeles County, California.

## GENERAL ALLEGATIONS

17. Plaintiff Hugo Garcia ("Plaintiff" or "GARCIA") was employed by Defendants as an Operations Associate at their private terminal facility at Los Angeles International Airport ("LAX") from on or about June 8, 2021, until his wrongful termination on November 20, 2024. His primary job responsibilities included customer service, luggage handling, escorting passengers through secure areas, training new hires, and driving on the tarmac.

18. Plaintiff's day-to-day employment at the LAX terminal was administered by personnel employed by The Private Suite LAX LLC and Extime PS Inc., acting through the unified HR department and shared leadership structure described above. The supervisors and HR personnel who administered disciplinary processes, conducted the coaching sessions, and ultimately terminated Plaintiff were acting on behalf of all Defendants through that unified structure.

19. Throughout his employment, Plaintiff was forced to perform additional tasks beyond his official job scope without proper compensation, including: transporting passengers to hotels and residences after domestic arrival flights, driving passengers to remote locations in Los Angeles, handling unscheduled overtime beyond his scheduled shifts without confirming his availability, and training new hires at a lower pay rate than the designated training department. Defendants required Plaintiff to work unscheduled and unplanned overtime with complete reckless disregard of Plaintiff's personal and family commitments.

20. Defendants also required Plaintiff to respond to work-related communications — including calls, texts, and emails — on his days off for over three years during his employment, failing to compensate him for this off-the-clock labor,

in complete reckless disregard of Plaintiff's own private personal and family commitments.

21. Defendants failed to provide Plaintiff with uninterrupted meal and rest breaks, preventing Plaintiff from fully disengaging from work responsibilities. Plaintiff frequently had to skip meal and rest breaks, remaining on-call and addressing work-related issues during mandated break periods.

22. Plaintiff was denied promotions to positions for which he was qualified, while the roles were given to younger, less experienced employees who lacked required qualifications (including the ability to drive members/passengers on the airfield). Plaintiff was told that he asked too many questions regarding suspicious activity he witnessed by managers and Defendants at work. When Plaintiff applied for Supervisor, he was rejected without explanation and told, "We don't want that for you right now."

23. Defendants also hired managers externally, discouraging internal promotions and reinforcing favoritism within the operations department that favored those who did not ask questions and agreed to ignore unethical practices.

24. In or around late 2022, Plaintiff raised serious security concerns to Phillip Martinez ("Martinez") regarding the improper handling of luggage and packages by certain managers. Specifically, Plaintiff reported that some managers were allowing items to bypass mandatory inspection procedures, including placing luggage onto aircraft without scanning or screening them as required. Despite these complaints, no corrective action was taken, and the unsafe practices persisted. Management appeared very irritated that Plaintiff asked too many questions and, as a result, Plaintiff stayed quiet in order to keep his job.

25. Plaintiff experienced a toxic and hostile work environment, characterized by verbal intimidation on August 20, 2024, from Manager Amine Banameur, who unfairly challenged Plaintiff's adherence to Defendants' Standard Operating Procedure for documenting checked luggage and ensuring that only

checked luggage is loaded on planes. Despite Plaintiff's efforts to report workplace misconduct, HR failed to take corrective action, allowing the hostility to persist unchecked.

26. Defendants followed a practice of delaying investigation and discipline for workplace "incidents" that ordinarily would be addressed the next business day. Instead, management routinely waited until after announcing promotional opportunities to resurrect prior matters and use them as leverage against candidates.

27. Defendants used this timing practice to disqualify Plaintiff from advancement and to steer promotions to associates whom management believed would continue unethical practices. By withholding and then deploying stale allegations at promotion time, Defendants sought to make Plaintiff vulnerable and compliant.

28. Defendants mislabeled weekly "coaching sessions" with Yentl Mauger ("Mauger") as developmental meetings when, in fact, they functioned as interrogations, harassments, and oppressive meetings aimed at identifying which associates to target next based on favoritism, gossip, or which staff asked fewer questions. During these meetings, managers pressed Plaintiff for gossip about co-workers rather than addressing performance or training.

29. Plaintiff found these practices unprofessional and refused to participate in management's efforts to solicit gossip or to conform to the described unethical practices. After he declined to cooperate, Defendants escalated their targeting of him through selective enforcement and pretextual discipline in the months leading up to November 14, 2024.

30. On April 18, 2024, Plaintiff received a Corrective Action Form for tardiness, which HR Director Natalie Kimm ("Kimm") assured him would not be made part of his record due to his submission of supporting documentation. Because all staff must park and then wait for a work shuttle to the clock-in location, it was common for most staff to be early to the shuttle pick-up at the work premises but

"late" to the clock-in area. Thus, "late" to the clock-in area was rarely considered a "tardy" because management knew it was caused by the workplace's own required shuttle.

31. On November 14, 2024, after Plaintiff met with Assistant Director Grace Kelly and HR Representative Raisa Recto to report favoritism, Defendants retaliated with a toxic and hostile work environment and condescending behavior by management.

32. Defendants deliberately altered their Attendance and Lateness policy to create a pretext for Plaintiff's termination. Defendants cited attendance and tardiness as the basis for Plaintiff's dismissal; however, Plaintiff consistently provided valid documentation supporting his absences and late arrivals, including medical notes for absences due to illness and evidence of unavoidable traffic disruptions. Additionally, tardies attributable to Defendant's own shuttle were used against Plaintiff despite being excused for other employees. Defendants disregarded these legitimate explanations and selectively enforced disciplinary actions, demonstrating a pattern of unfair treatment.

33. Plaintiff engaged in protected activity by reporting favoritism, workplace misconduct, a toxic and hostile work environment, and condescending behavior by management to Human Resources and department directors. In direct retaliation, Defendants imposed selective disciplinary measures against Plaintiff and ultimately terminated his employment on November 20, 2024, violating California Labor Code § 98.6, which protects employees from retaliation for reporting unlawful workplace practices.

34. Defendants also mishandled and improperly distributed employee tips, referred to as Member Incentive Bonuses ("MIB"). Instead of providing clear calculations or proper accounting, Defendants issued tips via paychecks without any computation or breakdown, leaving employees with no transparency on the amounts owed to them. Employees were required to submit their tips daily, but Defendants

failed to implement a tracking system or explain the method of distribution. Plaintiff asked for transparency of how tips were pooled, as different customers gave very different amounts daily, yet the tips on the paychecks would remain constant even on days that some staff received unusually high tips of as much as $500 from a single VIP customer. Because Plaintiff asked questions about tip calculation, Defendants retaliated by building pretextual grounds for his termination.

35. Before Plaintiff's termination, Defendants created a hostile work environment in hopes that Plaintiff would resign. Plaintiff has a family to care for and could not afford losing employment, and thus endured retaliation in the form of a hostile work environment, harassment, and oppression.

36. Plaintiff has since sought professional counseling due to emotional distress and anxiety caused by Defendants' retaliatory actions. Since returning to work at LAX airport, Plaintiff experiences anxiety triggered by frequent encounters with Defendants' company vehicles and continues to seek mental health support.

37. Plaintiff has timely and properly exhausted his administrative remedies for claims of retaliation under the California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq. On July 15, 2025, the California Civil Rights Department issued a Notice of Right-to-Sue. A true and correct copy of the Notice is attached hereto and incorporated herein as Exhibit A.

38. Plaintiff has also exhausted all administrative prerequisites for pursuing civil penalties under the Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698 et seq. On July 15, 2025, Plaintiff provided written notice to the California Labor and Workforce Development Agency ("LWDA") and to Defendants, identifying the specific

39. Labor Code provisions alleged to have been violated, along with the supporting facts and legal theories. LWDA Case No. LWDA-CM-1112001-25. More than sixty-five (65) days have passed since the LWDA notice was submitted, and the LWDA has not issued a notice of intent to investigate. Accordingly, Plaintiff is

authorized to pursue civil penalties under PAGA on behalf of himself, other aggrieved employees, and the State of California. A true and correct copy of the LWDA confirmation email is attached hereto and incorporated herein as Exhibit B.

40. This civil action is filed and maintained in court notwithstanding any purported arbitration agreement because, in related litigation involving the same employer, the Los Angeles Superior Court denied a motion to compel arbitration. In Iman Frederick v. The Private Suite Holdings, LLC, Case No. 23STCV14059, the Court (Dept. 11, Hon. David S. Cunningham III) denied Defendant's motion on August 15, 2024, after focusing on Ortiz v. Randstad Inhouse Services, LLC (9th Cir. 2024) 95 F.4th 1152 and the transportation-worker exemption to the FAA. A true and correct copy of the Minute Order dated August 15, 2024, is attached hereto as Exhibit C.

## FIRST CAUSE OF ACTION

## Retaliation in Violation of Cal. Labor Code §§ 1102.5, 98.6, and 6310

(Against All Defendants)

41. Plaintiff realleges and incorporates by reference each paragraph above as though fully set forth herein.

42. At all relevant times, Plaintiff was an employee protected under Labor Code §§ 1102.5, 98.6, and 6310, which prohibit an employer from retaliating against an employee for engaging in protected activity, including reporting unlawful workplace practices, wage-and-hour violations, and safety concerns.

43. Plaintiff engaged in protected activity by disclosing and opposing practices he reasonably believed violated statutes, regulations, and public policy, including: (a) serious aviation safety and security violations — specifically, managers allowing unscreened luggage and packages onto aircraft without mandatory scanning or inspection — reported to management including Phillip Martinez in or about 2022; and (b) workplace violations and misconduct, including hostile work environment, selective policy enforcement, and favoritism in

promotions favoring younger, less-qualified employees, reported to HR Representative Raisa Recto and Assistant Director Grace Kelly, including at a meeting on November 14, 2024.

44. Defendants, through their unified HR department and shared leadership structure, knew of Plaintiff's protected complaints and disclosures.

45. Thereafter, Defendants retaliated against Plaintiff by, among other things, selectively enforcing discipline, using weekly "coaching sessions" to target Plaintiff when he refused to participate in gossip, retroactively changing the Attendance and Lateness policy as a pretext, and terminating Plaintiff on November 20, 2024, despite his documentation supporting absences and tardiness.

46. Plaintiff's protected activity was a substantial motivating reason for the adverse actions taken against him.

47. By the foregoing, Defendants violated Labor Code § 1102.5 (whistleblower retaliation). Plaintiff seeks back pay/front pay, general damages (including emotional distress), injunctive relief, civil penalties of $10,000 per violation (Lab. Code § 1102.5(f)), reasonable attorneys' fees and costs (Lab. Code § 1102.5(j)), and interest.

48. Defendants violated Labor Code § 98.6 by retaliating against Plaintiff for exercising rights under the Labor Code and for making good-faith complaints. Plaintiff seeks reinstatement (if sought), back pay and benefits, civil penalty of $10,000 per violation (Lab. Code § 98.6(b)(3)), attorneys' fees and costs where authorized by law, injunctive relief, and interest.

49. Defendants further violated Labor Code § 6310 by retaliating against Plaintiff for bona fide safety complaints regarding aviation security violations. Plaintiff seeks back pay and benefits, injunctive relief, and interest.

50. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees

and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## SECOND CAUSE OF ACTION

### Retaliation in Violation of the Fair Employment and Housing Act (Gov. Code § 12940(h))

(Against All Defendants)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52. Plaintiff engaged in protected activity under FEHA by opposing practices he reasonably believed to constitute age-based discrimination and harassment/hostile work environment, including unfair promotion practices favoring younger, less-qualified employees, verbal intimidation and hostility by Manager Amine Banameur, and selective policy enforcement. Plaintiff reported these issues to HR Representative Raisa Recto and Assistant Director Grace Kelly, including at a meeting on November 14, 2024.

53. Plaintiff has exhausted administrative remedies with the California Civil Rights Department and received a Right-to-Sue on or about July 15, 2025, within the one-year statutory period.

54. Defendants, through their unified HR department and shared leadership structure, knew of Plaintiff's FEHA-protected activity. Thereafter, they subjected Plaintiff to adverse employment actions — including selective discipline, a retroactive policy change used as pretext, and termination on November 20, 2024 — substantially motivated by Plaintiff's protected activity.

55. As a direct and proximate result of Defendants' violations of Gov. Code § 12940(h), Plaintiff suffered lost wages and benefits, emotional distress, and other harm.

56. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees

and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

**THIRD CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

Against All Defendants)

57. Plaintiff incorporates by reference and re-alleges all of the allegations in each paragraph as though fully set forth herein.

58. Plaintiff's termination violated fundamental public policies established under California law, including the right to report unlawful workplace conduct without retaliation. These policies are reflected in California Labor Code § 98.6, Government Code § 12940(a), and wage and safety regulations, and are firmly grounded in the California Supreme Court's decision in Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, which recognizes a common law cause of action for wrongful termination when an employee is discharged for engaging in protected activity or refusing to participate in unlawful practices.

59. Plaintiff engaged in protected activity by reporting workplace misconduct, favoritism, and a hostile environment to HR and department directors. He raised concerns about unfair promotion practices favoring younger, less qualified employees, verbal mistreatment by Manager Amine Banameur, and selective enforcement of policies targeting whistleblowers.

60. Plaintiff also reported uncompensated off-the-clock work, denial of lawful meal and rest breaks, and improper handling of employee tips (MIB). Defendants required Plaintiff to respond to work communications on his days off, perform tasks outside his job scope without proper pay, and submit daily tips without transparency or accounting.

61. Plaintiff also reported, in or about 2022 and 2024, serious aviation security lapses to management, including Phillip Martinez, involving managers allowing luggage and packages to bypass mandatory inspection procedures.

62. Defendants used weekly "coaching sessions" to solicit gossip and target employees. Plaintiff refused to participate in these unethical practices, and Defendants escalated their targeting of him through selective discipline and pretextual corrective actions.

63. Following Plaintiff's complaints — and specifically after the November 14, 2024 meeting with Assistant Director Grace Kelly and HR Representative Raisa Recto — Defendants retaliated by retroactively changing the Attendance and Lateness policy and selectively enforcing discipline to justify termination on November 20, 2024.

64. Plaintiff provided documentation for absences and tardiness, including medical notes and traffic-related evidence, but Defendants ignored this and terminated his employment. The timing and pretext demonstrate the termination was retaliatory and contrary to public policy.

65. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## FOURTH CAUSE OF ACTION

## Failure to Provide Meal Breaks (Lab. Code §§ 226.7, 512; IWC Wage Order No. 9-2001)

(Against All Defendants)

66. Plaintiff incorporates by reference and re-alleges all of the allegations in each paragraph as though fully set forth herein.

67. Defendants failed to provide Plaintiff with uninterrupted meal breaks, frequently forcing Plaintiff to remain on-call and responsive to work-related interruptions during designated meal periods.

68. Plaintiff often had to skip meal breaks altogether due to excessive workloads and unmanageable staffing demands, resulting in physical exhaustion and heightened stress.

69. California Labor Code § 512 and IWC Wage Order No. 9-2001 require employers to provide a 30-minute uninterrupted meal break before the end of the fifth hour of work. If an employee works more than 10 hours in a day, a second 30-minute meal break is required before the end of the tenth hour.

70. Defendants failed to comply with these statutory requirements, depriving Plaintiff of his right to uninterrupted meal periods as required by law. Under California Labor Code § 226.7, Defendants are liable to Plaintiff for premium wages, entitling Plaintiff to one additional hour of pay at his regular rate for each workday a meal break was denied.

71. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## FIFTH CAUSE OF ACTION

## Failure to Provide Rest Breaks (Lab. Code § 226.7; IWC Wage Order No. 9-2001)

(Against All Defendants)

72. Plaintiff incorporates by reference and re-alleges all of the allegations in each paragraph as though fully set forth herein.

73. Defendants failed to provide Plaintiff with uninterrupted rest breaks, instead requiring Plaintiff to remain available for work-related matters during designated rest periods.

74. Plaintiff frequently had to forgo rest breaks due to overwhelming job demands, leading to increased stress and diminished well-being.

75. California Labor Code § 226.7 and IWC Wage Order No. 9-2001 mandate uninterrupted 10-minute rest periods for every four hours worked or major fraction thereof, scheduled as far as practicable in the middle of each work period. If an employer fails to provide required rest breaks, it must compensate employees with one additional hour of pay at the regular rate for each workday a rest break was denied.

76. As a direct result of Defendants' failure to provide rest breaks, Plaintiff is entitled to premium wages under California Labor Code § 226.7 for each workday a rest break was denied.

77. Plaintiff is entitled to all remedies permitted under law, including compensatory damages,civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## SIXTH CAUSE OF ACTION

## Failure to Pay Overtime and All Wages Due (Lab. Code §§ 510, 1194, 1197, 1198; IWC Wage Order No. 9-2001)

(Against All Defendants)

78. Plaintiff incorporates by reference and re-alleges all of the allegations in each paragraph as though fully set forth herein.

79. Throughout his employment, Plaintiff was required to perform substantial unpaid job duties beyond his official scope, including transporting passengers to hotels and remote locations in Los Angeles, handling unscheduled overtime without confirming his availability, and training new hires at a lower pay rate than designated training personnel.

80. Defendants also required Plaintiff to respond to work-related communications on his days off — including calls, texts, and emails — for over three years without compensation. This off-the-clock work constitutes compensable time under California law.

81. Defendants willfully underpaid Plaintiff for training new hires, despite his performance of essential onboarding tasks equivalent in function and responsibility to those conducted by employees officially assigned to the training department.

82. Pursuant to Labor Code §§ 510, 1194, 1197, and 1198, Plaintiff is entitled to recover unpaid minimum wages, regular wages, and overtime wages, plus interest thereon, reasonable attorneys' fees, and costs.

83. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## SEVENTH CAUSE OF ACTION

### Failure to Indemnify Necessary Business Expenses (Lab. Code § 2802)

(Against All Defendants)

84. Plaintiff incorporates by reference and re-alleges all of the allegations in each paragraph as though fully set forth herein.

85. During his employment, Plaintiff necessarily incurred expenditures and losses in direct consequence of discharging job duties, including but not limited to: (a) required use of a personal cellphone for work-related calls, texts, messaging, and email; (b) data, voice, and service plan charges; (c) use of a personal vehicle for work travel to remote locations in Los Angeles (including mileage, fuel, parking, and tolls); and (d) other out-of-pocket costs reasonably necessary to perform assigned tasks, including transporting passengers and mentoring/training new hires off-site.

86. Defendants knew or had reason to know Plaintiff incurred these expenditures because they directed, required, and/or suffered or permitted the work giving rise to them and routinely communicated with Plaintiff via personal devices outside scheduled hours.

87. Defendants failed to indemnify Plaintiff for all necessary expenditures as required by Labor Code § 2802, thereby causing Plaintiff to bear business costs that should have been reimbursed by Defendants.

88. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

**EIGHTH CAUSE OF ACTION**

**Unfair Competition Law — "Unlawful" Prong (Bus. & Prof. Code § 17200 et seq.)**

(Against All Defendants)

89. Plaintiff re-alleges and incorporates by reference each paragraph above as though fully set forth herein.

90. Defendants have engaged in "unlawful" business acts and practices, including violations of Labor Code §§ 226, 226.7, 2802, 510, 512, 1194, 1197, 1198; the applicable IWC Wage Order(s); and unlawful gratuities handling in violation of Labor Code §§ 351 and 353, including diversion/misallocation of gratuities, distribution to managers/supervisors or non-tip-eligible purposes, and failure to maintain transparent, lawful tip policies.

91. Under Labor Code § 351, gratuities are the sole property of non-managerial employees. By diverting or retaining gratuities, Defendants obtained money in which Plaintiff had an ownership interest, and such amounts are recoverable as restitution under Business and Professions Code § 17203.

92. California Business and Professions Code § 17200 prohibits unlawful, unfair, and fraudulent business practices. Defendants' conduct constitutes unlawful business practices within the meaning of the UCL. As a result of the foregoing unlawful acts, Defendants unjustly retained money belonging to Plaintiff, including misallocated tips/gratuities and unpaid wages.

93. Plaintiff seeks restitution (including restitution of any misallocated gratuities) and injunctive relief under Bus. & Prof. Code § 17200 et seq.

**NINTH CAUSE OF ACTION**

**Failure to Provide Personnel Records (Lab. Code § 1198.5)**

(Against All Defendants)

94. Plaintiff re-alleges and incorporates by reference each paragraph above as though fully set forth herein.

95. On December 17, 2024, Plaintiff formally requested full access to his personnel records, including timesheets, and issued a Notice of File Preservation in anticipation of litigation. Defendants were legally obligated to comply within the statutory timeframe but failed to produce complete personnel records, violating California Labor Code § 1198.5.

96. Despite Defendants' initial failure, Plaintiff sent a follow-up request on February 20, 2025, reiterating his demand for full records. Defendants continued to withhold essential documents, further compounding their violation of California labor laws.

97. Defendants' deliberate noncompliance with California Labor Code § 1198.5 deprived Plaintiff of critical employment records necessary to substantiate his claims. Plaintiff is entitled to injunctive relief compelling compliance and the statutory $750 penalty under Labor Code § 1198.5(k), plus attorneys' fees and costs.

98. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

**TENTH CAUSE OF ACTION**

**Waiting Time Penalties (Lab. Code § 203)**

(Against All Defendants)

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

100. Defendants willfully failed to pay Plaintiff all wages due at the time of termination, including unpaid overtime, missed meal and rest break premiums, and improperly withheld tips. Despite Plaintiff's repeated requests and submission of supporting documentation, Defendants failed to issue final wages in accordance with California Labor Code § 201.

101. As a result, Plaintiff is entitled to waiting time penalties under Labor Code § 203 for each day the wages remained unpaid, up to 30 days.

102. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## ELEVENTH CAUSE OF ACTION

## Wage Statement Violations (Lab. Code § 226)

(Against All Defendants)

103. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

104. Defendants knowingly and intentionally failed to provide accurate itemized wage statements as required by Labor Code § 226. Specifically, Plaintiff's wage statements omitted critical information, including breakdowns of Member Incentive Bonuses (tips), missed meal/rest break premiums, and accurate hours worked.

105. These omissions caused confusion, financial harm, and impeded Plaintiff's ability to verify proper compensation. Plaintiff is entitled to statutory damages and penalties under Labor Code § 226(e).

106. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees

and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

## TWELFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

(Against All Defendants)

107. Plaintiff re-alleges and incorporates by reference each paragraph above as though fully set forth herein.

108. Defendants engaged in a deliberate and malicious campaign to destabilize Plaintiff's emotional well-being, beginning with verbal intimidation, exclusion from promotions, and retaliatory discipline following protected complaints.

109. After Plaintiff reported workplace misconduct and serious aviation security violations — including unscreened luggage placed on aircraft — Defendants escalated their retaliation through gossip-driven "coaching sessions," selective enforcement of policies, and policy manipulation to justify termination.

110. Defendants ignored Plaintiff's valid documentation for absences and tardiness, disregarded his reports of unsafe practices, and terminated him under false pretenses shortly after his November 14, 2024 HR meeting.

111. This conduct was extreme and outrageous, intended to silence Plaintiff and punish him for asserting his rights. It far exceeded the bounds of acceptable workplace behavior.

112. As a direct result, Plaintiff suffered severe emotional distress, including anxiety, humiliation, and sleep disturbance. He required professional counseling and continues to experience heightened anxiety triggered by encounters with Defendants' company vehicles at LAX.

113. Defendants acted with oppression, fraud, and malice, warranting punitive damages under Civil Code § 3294.

114. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

**THIRTEENTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

Against All Defendants)

115. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

116. Defendants owed Plaintiff a duty to maintain a safe and lawful workplace, including proper supervision, fair treatment, and prompt response to complaints.

117. Defendants breached that duty by ignoring Plaintiff's reports of verbal intimidation, unsafe luggage handling, off-the-clock labor, missed breaks, and improper tip distribution. They allowed retaliation to flourish unchecked through the unified HR department and shared leadership structure of all Defendants.

118. This negligence created a foreseeable risk of emotional harm, which Plaintiff suffered through anxiety, humiliation, and psychological distress requiring professional treatment.

119. Plaintiff is entitled to all remedies permitted under law, including compensatory damages, civil penalties, emotional distress damages, attorneys' fees and costs, and any applicable injunctive or equitable relief of at least $10,000 and up to $5,000,000.

**FOURTEENTH CAUSE OF ACTION**

**Private Attorneys General Act ("PAGA") – Cal. Labor Code §§ 2698 et seq.**

(Against All Defendants)

120. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

121. Plaintiff is an "aggrieved employee" within the meaning of California Labor Code § 2699(c), having been employed by Defendants and subjected to one or more violations of the California Labor Code as alleged herein.

122. On July 15, 2025, Plaintiff provided written notice to the Labor and Workforce Development Agency ("LWDA") and to Defendants pursuant to Labor Code § 2699.3, identifying the specific Labor Code violations and supporting facts on behalf of himself and similarly aggrieved non-exempt employees (LWDA Case No. LWDA-CM-1112001-25). More than sixty-five (65) days have passed without an LWDA notice of intent to investigate; accordingly, Plaintiff is authorized to pursue civil penalties under PAGA.

123. Plaintiff alleges Defendants committed the following Labor Code violations (representative and non-exclusive):

124. §§ 510, 1198, 1199 — Underpayment of wages, including off-the-clock work and work during breaks without full compensation.

125. §§ 512(a), 1198, 226.7(c) — Failure to provide compliant meal periods and to pay meal-period premiums (one additional hour at the regular rate) when meal periods were not provided.

126. §§ 226.7(a), 1198, 226.7(c) — Failure to authorize and permit rest periods and to pay rest/recovery-period premiums (one additional hour at the regular rate) when rest or recovery periods were not provided.

127. §§ 351, 353 — Misappropriation/mishandling of tips/"Member Incentive Bonuses" (MIBs) and lack of transparency in tip distribution.

128. §§ 201, 202 — Failure to timely pay all earned wages at separation.

129. § 2802 — Failure to reimburse necessary business expenses, including off-hours communications and travel-related tasks.

130. § 226(a) — Failure to provide accurate, itemized wage statements.

131. § 1174 — Failure to maintain accurate timekeeping and payroll records.

132. The foregoing violations were committed against Plaintiff and other aggrieved employees, reflect a pattern or practice of noncompliance, and give rise to civil penalties under Labor Code § 2699.

133. Pursuant to Labor Code § 2699, Plaintiff seeks: (a) civil penalties for each initial and subsequent violation for each aggrieved employee per pay period (default penalties under § 2699(f)(2) where section-specific penalties do not apply); (b) attorneys' fees and costs under § 2699(g)(1); and (c) injunctive and declaratory relief under § 2699(e). Civil penalties shall be distributed 65% to the LWDA and 35% to aggrieved employees pursuant to § 2699(m).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as to all causes of action, as follows:

A. For general and compensatory damages according to proof at trial or up to $10,000,000;

B. Unpaid wages and premiums: unpaid minimum, regular, and overtime wages (Lab.

C. Code §§ 510, 1194, 1197, 1198) and premium wages for missed meal and rest periods (Lab. Code § 226.7), plus interest;

D. Expense reimbursement: full indemnification of necessary business expenses (Lab.

E. Code § 2802), plus fees and interest as permitted;

F. Waiting-time penalties under Labor Code § 203;

G. Wage-statement penalties and damages under Labor Code § 226(e);

H. Personnel-records relief: injunctive relief compelling compliance and the statutory $750

I. penalty under Labor Code § 1198.5(k), plus fees;

J. UCL relief only: restitution (including restitution of any misallocated gratuities) and

K. injunctive relief under Bus. & Prof. Code § 17200 et seq. (no damages or statutory penalties under the UCL);

L. Labor Code retaliation remedies: back pay/front pay, injunctive relief, attorneys'

M. fees/costs where authorized, and the statutory $10,000 civil penalty for each violation of Labor Code § 98.6(b)(3) and § 1102.5(f);

N. EHA retaliation remedies (Gov. Code § 12940(h)): compensatory damages (including

O. emotional distress), punitive damages where permitted (Civ. Code § 3294), injunctive and declaratory relief, and reasonable attorneys' fees and costs (Gov. Code § 12965(b));

P. PAGA civil penalties, attorneys' fees and costs, and allocation as provided by Labor

Q. Code § 2699 et seq.;

R. Pre- and post-judgment interest at the maximum rate permitted by law;

S. Costs of suit; and

T. Such other and further relief as the Court deems just and proper.

Dated: June 4, 2026

Respectfully Submitted,

**WEST THEMIS LAW, PC**

By:____________________
Sally S. Chan, Esq.
Karen K. Tso, Esq.
Attorneys for Plaintiff
HUGO GARCIA

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR

Civil Rights Department
KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

July 15, 2025

Hugo Garcia
1200 W. Casad Avenue
West Covina, CA 91790

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202507-30291415
Right to Sue: Garcia / Extime PS, LLC

Dear Hugo Garcia:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective July 15, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

# EXHIBIT B

Outlook

**Thank you for submission of your PAGA Case.**

**From** noreply@salesforce.com <noreply@salesforce.com>
on behalf of
LWDA DO NOT REPLY <lwdadonotreply@dir.ca.gov>

**Date** Tue 15 Jul 2025 11:55 AM

**To** info@wthemislaw.com <info@wthemislaw.com>

7/15/2025

LWDA Case No. LWDA-CM-1112001-25
Law Firm : West Themis Law, PC
Plaintiff Name : Hugo Garcia
Employer: Extime Ps, LLC
Filing Fee : $75.00
IFP Claimed : No

Item submitted: Initial PAGA Notice

Thank you for your submission to the Labor and Workforce Development Agency. Please make a note of the LWDA Case No. above as you may need this number for future reference when filing any subsequent documents for this Case.

Please note that a PAGA Notice is not a complaint within the meaning of Division 5 (Labor Code §§6300 et seq.). To file a complaint about workplace safety and health hazards with Cal/OSHA, please visit: https://www.dir.ca.gov/dosh/complaint.htm

If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

# EXHIBIT C

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 11

**23STCV14059**
**IMAN FREDERICK vs THE PRIVATE SUITE HOLDINGS, LLC**

August 15, 2024
1:45 PM

Judge: Honorable David S. Cunningham III
Judicial Assistant: T. Lewis
Courtroom Assistant: C. Concepcion

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): Brian Alan Selvan (via LACourtConnect)

Other Appearance Notes: For Plaintiff: Noel Harlow (via LACourtConnect), Ashley Cruz (via LACourtConnect)

**NATURE OF PROCEEDINGS:** Further Status Conference

The matter is called for hearing.

The Court has read and considered the Plaintiff Iman Frederick's Supplemental Brief in Opposition to Defendant's Motion to Compel Arbitration filed on 07/09/2024, the Defendant's Supplemental Reply Brief filed on 07/24/2024, and the Joint Status Conference Report filed on 07/30/2024.

Court and counsel confer regarding the status of the case, and the Motion to Compel Arbitration.

The Court focused on Ortiz v. Randstadt Inhouse Services, LLC (9th Cir. 2024) 95 F.4th 1152. The Ortiz decision addresses the applicability of the FAA to Transp. Workers. The Ninth Circuit affirmed a District Court decision denying a motion to compel arbitration based on the FAA's Transportation workers exemption. The Court focused on the following: (1) defining "transportation worker"; (2) Plaintiff's specific job duties; (3) distinguishing other last-minute delivery type cases and reviewing splits in the circuit courts; and (4) rejecting the industry-based arguments.

The Notice of Motion and Motion to Compel Arbitration; Dismiss Class and PAGA Allegations and Request for Stay of any Remaining Proceedings Pending Arbitration filed by The Private Suite Holdings, LLC on 10/31/2023 is Denied.

The Court orders the following cases, 23STCV14059 and 23STCV28240, consolidated and assigned to Department 11 in Spring Street Courthouse for all purposes. The Court designates 23STCV14059 as the lead case. All future documents must be filed under 23STCV14059

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 11

**23STCV14059**
**IMAN FREDERICK vs THE PRIVATE SUITE HOLDINGS, LLC**

August 15, 2024
1:45 PM

Judge: Honorable David S. Cunningham III
Judicial Assistant: T. Lewis
Courtroom Assistant: C. Concepcion

CSR: None
ERM: None
Deputy Sheriff: None

(IMAN FREDERICK vs THE PRIVATE SUITE HOLDINGS, LLC). Case numbers on all subsequent filings should be reflected under the lead case.

Counsel informs the Court they have mediation scheduled for 03/11/2025.

A Post-Mediation Status Conference is scheduled for 04/14/25 at 09:30 AM in Department 11 at Spring Street Courthouse.

The parties are to file a five (5) page Joint Post-Mediation Status Conference Statement five (5) court days prior to the above scheduled status conference.

Plaintiff is to give notice.